IN THE UNITED DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| SARAH DUIKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. |
| | ) |
| BOARD OF TRUSTEES OF THE | ) |
| UNIVERSITY OF ILLINOIS, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, SARAH DUIKER, by one of her attorneys, Douglas J. Quivey of Londrigan, Potter & Randle, P.C., for her Complaint against Defendant, BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, states and alleges as follows:

### Jurisdiction and Venue

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq.

2. The unlawful employment practices hereinafter alleged were committed in the Central District of Illinois.

3. All pre-conditions to jurisdiction have been satisfied:

   a. Plaintiff filed a charge of unlawful employment discrimination with the Equal Employment Opportunity Commission (EEOC) within 300 days of the alleged acts of employment discrimination, a true

and exact copy of which is attached as Plaintiff's Exhibit A;

b. The United States Department of Justice, Civil Rights Division, issued a "right-to-sue" letter to Plaintiff on May 22, 2008, which was received by Plaintiff's counsel on May 28, 2008, a true and exact copy of which is attached hereto as Plaintiff's Exhibit B;

c. Plaintiff filed this Complaint within 90 days of receiving the right-to-sue letter.

## Parties

4. Plaintiff, Sarah Duiker, during all relevant times herein was and continues to be an adult female resident of Springfield, Illinois, in the Central District of Illinois, and an employee of the University of Illinois at Springfield.

5. During all relevant times, Defendant Board of Trustees of the University of Illinois is the governing body for the University of Illinois at Springfield and a covered entity within the meaning of the Civil Rights Act of 1964.

## COUNT I
## GENDER DISCRIMINATION--TITLE VII

6. On or about August 16, 1999, Plaintiff Duiker was hired by the University of Illinois at Springfield to be a dining room supervisor.

7. In May 2001, Plaintiff Duiker was promoted to staff clerk for Food Service.

8. At all relevant times, the Director of Food Service for the University of Illinois at Springfield was Alan Barnhart.

9. Starting in May 2004 and continuing into May 2006, Director Barnhart repeatedly and continually subjected Plaintiff to sexual harassment including but not limited to the following:

    a. Director Barnhart once told Plaintiff that he tried and failed to get an attachment for a chair "such as an eight inch tongue, you know I am known for that";

    b. Telling Plaintiff that she should go to the cooler and get a carrot or cucumber and use them as sex toys with the chair;

    c. Director Barnhart left a heavy breathing message on Plaintiff's voice mail and then asked her how she liked it;

    d. After a new camera system was installed Director Barnhart told Plaintiff that he now "had a nice view" of Plaintiff's ass;

    e. Director Barnhart continually made comments about is sex life with his wife;

    f. Director Barnhart continually made sexually suggestive comments about female students and employees;

    g. Director Barnhart told Plaintiff if she did not want to lick her fingers to be able to turn pages that she could lick him;

    h. Director Barnhart told Plaintiff after she commented that she was tired after riding her horse that she should see how tired she would

be after riding him;

i. When Plaintiff's Niece visited Plaintiff at work, Director Barnhart commented that he wanted to swim nude with Plaintiff and Plaintiff's Niece;

j. After the comment about swimming nude, Director Barnhart left a message on Plaintiff's home phone asking Plaintiff's Niece to go swimming with him;

k. Director Barnhart told Plaintiff that Plaintiff's Niece "could perform for him anytime";

l. Director Barnhart told Plaintiff she could go home but only if she brings her Niece back with her;

m. Director Barnhart moved the security camera so it pointed directly at Plaintiff's desk;

n. Both before and after the University started investigating Plaintiff's complaints, Director Barnhart would leer at Plaintiff in a suggestive manner;

o. After the University started investigating the matter and Plaintiff was told that Director Barnhart was not supposed to have contact with Plaintiff, Barnhart showed-up at Plaintiff's work location wearing a tank top and shorts saying he needed to get file;

  p. After the investigation started, Director Barnhart told Plaintiff that he could watch Plaintiff via the security camera from his house;

  q. After the investigation started, Director Barnhart sent Plaintiff an e-mail that stated in part: "I will let you be in my dreams if you let me be in yours";

  r. After Plaintiff complained about the e-mail, Director Barnhart told Plaintiff: "What, don't you want to be in my dreams?";

  s. After the investigation started, Director Barnhart followed Plaintiff out of the office and around campus and when she told him that he was stalking her, he smiled.

10. On numerous occasions, Plaintiff told Alan Barnhart to stop and he refused.

11. Plaintiff filed both informal and formal complaints about Barnhart's sexual harassment with various University officials.

12. After Plaintiff filed the complaints both with the University and with the EEOC, she was subjected to retaliation that included but was not limited to the following:

  a. she received a negative performance evaluation that was based in part on information from Director Barnhart;

  b. a security camera was moved to point directly at Plaintiff's desk;

    c.    Plaintiff no longer was allowed to eat at her desk and other special rules were imposed on Plaintiff that previously were not in effect;

    d.    Plaintiff's office was moved out of food service to across campus, away from all co-workers, while Director Barnhart remained in his office;

    e.    Plaintiff was forced to clock-in at food service and then drive across campus to her new office;

    f.    Plaintiff had duties taken away and was no longer allowed access to personnel files;

    g.    Plaintiff was given new extra duties;

    h.    Plaintiff was given a new person to report to who gave her a negative performance evaluation and who did not personally monitor her work or directly supervise her performance;

    i.    Plaintiff was eventually transferred to a new position in the athletic department, a position to which she had no prior experience or training, because it was evident that Director Barnhart would not be moved and the harassment would continue.

13.    As a direct and proximate result of the discrimination, Plaintiff suffered severe psychological harm, aggravation of pre-existing psychological conditions, and was subjected to extreme humiliation and stress.

14. As a direct and proximate result of the discrimination, Plaintiff was unable to work for a period of time, forced to take FMLA leave, and required medical attention.

15. As a direct and proximate result of the discrimination, Plaintiff, after returning from FMLA leave, was only able to work a part-time schedule for a period of time.

16. As a direct and proximate result of the discrimination and Defendant's refusal to move Director Barnhart, Plaintiff took a job that she was not qualified for in an area that she had no experience.

WHEREFORE, Plaintiff prays that judgment be entered against Defendant as follows:

(A) Declare that the above alleged acts of Defendant constitute sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq.;

(B) Direct Defendant to expunge all derogatory information from Plaintiff's personnel file which resulted from the discriminatory and retaliatory acts of Defendant;

(C) Award damages for all lost wages and benefits;

(D) Award damages for mental pain and suffering, emotional pain, humiliation, inconvenience, aggravation of pre-existing conditions, and other non-pecuniary losses occurring in the past and reasonably certain to occur in the future;

(E) Award damages for the costs of medical treatment required as a result of the discrimination;

(F) Direct Defendant make Plaintiff whole for all special damages she has incurred as a result of Defendant's discriminatory acts;

(G) Award reasonable attorney's fees and costs;

(H) Award other just and equitable relief as the Court deems fit.

PLAINTIFF DEMANDS TRIAL BY JURY.

          Respectfully submitted.

          SARAH DUIKER, Plaintiff,

          By:   /s/ Douglas J. Quivey
          Douglas J. Quivey, Bar No.: 6225888
          Attorney for Defendants
          LONDRIGAN, POTTER & RANDLE, P.C.
          1227 South Seventh Street
          P.O. Box 399
          Springfield, IL 62705
          217/544-9823
          217/544-9826 (fax)
          doug@lprpc.com